# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| GILDA YAZZIE,<br>PO Box 277<br>Lukachikai, AZ 86507 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>)<br>)<br>)<br>) |
| vs. | ) CASE NO.<br>)<br>) |
| NATIONAL ORGANIZATION FOR<br>WOMEN, 1100 H Street NW, Suite 300<br>Washington, DC 20005 | )<br>)<br>)<br>) |
| TONI VAN PELT, In her individual<br>capacity, Residential address unknown, | )<br>)<br>) |
| CYNTHIA DRAEBEK In her individual<br>capacity, Residential address unknown , | )<br>)<br>) |
| BETH CORBIN, In her individual<br>capacity, Residential address unknown | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## COMPLAINT FOR DAMAGES

## PRELIMINARY STATEMENT

1.    Plaintiff Gilda Yazzie institutes this action for actual damages, statutory

damages, punitive damages, attorney fees, and the costs of this action against

Defendants, The National Organization for Women (NOW), Toni Van Pelt,

Cynthia Drabek and Beth Corbin. Plaintiff Yazzie complains of blatant tokenism

recognizing it to be racial discrimination and harassment  in the workplace as

well as assault,  battery and slander.

## PARTIES, JURISDICTION & VENUE

2.    Defendant National Organization for Women ("NOW") is an entity in corporate

form. It has, within the past two calendar years, employed a sufficient number of

individuals to qualify as an employer for purposes of 42 USCS § 2000e(b).

3.    Defendant NOW has its organizational headquarters within the District of

Columbia.

4.    The principal place of the  employment relationship which is the subject of this

action was within the District of Columbia.

5.    Plaintiff Gilda Yazzie was an officer and also an employee of Defendant NOW.

6.    Plaintiff Gilda Yazzie identifies as Native American.

7.    Plaintiff Gilda Yazzie at all times herein relevant was and is associated with and

has advocated on behalf of co-workers and other individuals of African

American and Asian race or racial background.  In addition, Plaintiff Gilda

Yazzie has been associated with and has advocated on behalf of individuals of

the Muslim religion.

8.    The unlawful employment practices described herein were committed in the District of Columbia.

9.    The residential addresses of all individual defendants, each of whom is sued in their individual capacity, are unknown to Plaintiff. However, each of them engaged in the misconduct alleged herein with the District of Columbia.

10.   Plaintiff has exhausted all applicable administrative remedies.

## JURISDICTION

11.   This Court has jurisdiction to hear this matter under the general equitable§ powers to hear" any civil action or other matter at law or at equity brought in the District of Columbia." D.C. Code  § 1-204.31(a).

12.   This matter was timely filed on October 24, 2019, but was rejected by the clerk for matters of form.

## STATEMENT OF FACTS

13.   Plaintiff Gilda Yazzie was elected Vice President of the National Organization for Women (NOW) in the 2017 NOW Annual Conference.   In the same conference, her running mate, Toni Van Pelt, was elected President of NOW. Both Yazzie and Van Pelt were elected to four-year terms.

14.   In the campaign materials created and utilized by Van Pelt, Yazzie was referred as "100% Navajo." This was done without the Plaintiff's input, much less consent.  She identifies as Dine American.  Not only does she prefer not to be

identified by quantum, she finds it offensive.

15.     Under the NOW Bylaws, the President serves as the Chief Executive Officer and the Chief Financial Officer.  In that role, the President is required to produce the monthly financial reports. Also, under the NOW Bylaws, the Vice President acts as Treasurer and is responsible for managing human resources, staff, chapter and member relations and administration.

16.     Pursuant to NOW bylaws and practice, the President is required to produce monthly financial reports which are provided to the Vice President who, after review and consultation with the President, is required to present the reports to the NOW Executive Board.

17.     Upon beginning employment in July 2017, both Van Pelt and Yazzie were trained by their predecessors in office as to the roles and responsibilities of their respective offices. Yazzie had familiarity with the annual budgeting process through her tenure as a Board member serving on NOW's budget committee for more than  ten years.

18.     Following the assumption of office by Van Pelt and Yazzie, Van Pelt repeatedly referred to Yazzie as "weird" in private conversations with staff members, among whom were Emily Imhoff and Rachel Motley.

19.     Upon Van Pelt and Yazzie assuming office, Van Pelt refused to collaborate directly with Yazzie, to meet individually with her and would rarely communicate directly with Plaintiff.

20.   In August 2017, Van Pelt repeatedly told Tyler Goodridge and Rachel Motley, both of whom were NOW media staff, that the only reason she chose Yazzie as her running mate for the Vice President position was because the campaign needed "a woman of color" to get elected.

21.   At one point, Van Pelt summoned Emily Imhoff into her office to verify what counted as a reimbursable moving expense submitted by Yazzie.  According to prior NOW Board practice, what moving expenses were reimbursable had never been explicitly defined.  Nonetheless, it appeared Van Pelt took the position that somehow Yazzie had improperly sought reimbursement for moving expenses. However, Van Pelt instructed Imhoff not to bring the matter to Yazzie's attention.

22.   Under the Administration of former President Terry O'Neill  and Vice-President, Bonnie Grabenhofer, the President, serving as the Chief Financial Officer, created the monthly financial reports and the created an annual budget before passing it onto the Vice President for review. Once the President and Vice President reached agreement on the budget, it was brought to the Budget Committee for review and approval. Finally, the proposed budget was brought to the full National Board for discussion and a vote.  Van Pelt unilaterally removed Yazzie from the budget review process, notwithstanding Yazzie's position as Vice President and Treasurer and notwithstanding the Plaintiff's familiarity with the process,

Yazzie v. National Organization for Women, Complaint for Damages

23.    Rui Mulligan, who identifies as Asian-American, managed NOW social media fundraising and had done so successfully since 2015, substantially increasing funds raised for the organization during her tenure.  On October 2, 2017, Van Pelt unilaterally removed Mulligan from all of NOW's social media accounts and changed all her passwords, without informing her beforehand. Van Pelt did not give Mulligan a reason thereafter.  Mulligan attempted to arrange a meeting with Van Pelt to find out the reason for the job change, but Van Pelt never deigned to sit down with Mulligan and explain the reasons for the actions.  Publicly, in front of coworkers, Van Pelt said Mulligan's "best was simply not good enough."

24.    Under prior NOW operating procedures, both the President and Vice President are required to cosign all checks above $5,000.  That is how expenses were paid during the presidency of Terry O'Neill.  Van Pelt ordered that a signature stamp for Yazzie's signature be bought and directed Emily Imhoff to deliver it to Van Pelt's personal residence in Florida.  Imhoff did not obey this order but instead had the signature stamp delivered to the NOW Headquarters in Washington, D. C. Van Pelt obtained the signature stamp and kept it locked in her office. Although NOW procedures require that checks be signed by the Vice President as well as the President, Van Pelt eventually had NOW's bank remove Plaintiff's name as cosigner and replaced with a lower ranking staffer.

25.    Following the resignation of Paul Wommack, Network Administrator, in December 2017, Van Pelt instructed NOW Senior Accounting Executive Sparkle

Barrett to withhold Wommack's final paycheck, which consisted of two weeks of pay and unused vacation time. When Barrett expressed reluctance, Van Pelt shouted and stood hovering less than a foot away from Barrett's desk. This incident was witnessed by other staff members.

26.     Yazzie objected to Van Pelt's refusal to pay Wommack all that he was owed. Van Pelt was instructed by Yazzie in the obligations of an employer pursuant to relevant statutes and regulations. Van Pelt was eventually directed by the auditing consultant, to pay Paul Wommack all that he was owed. Barrett had not removed Wommack from the payroll system, and the final paycheck was issued. Angered, Van Pelt threatened to fire Barrett and to pursue legal action against her for the "wrongful act" of paying an employee his wages. Van Pelt shouted at Barrett and physically hovered outside Barrett's office until Barrett removed Wommack from NOW's payroll system. Barrett identifies as African American.

27.     Prior to the dispute over Wommack's final paycheck, Barrett had become accustomed to Van Pelt shouting at her and being spoken to harshly by Van Pelt.

28.     In January 2018, Van Pelt removed Yazzie's access to NOW's payroll software, notwithstanding the fact that as a Vice President she was required to have access to the Defendant's payroll records to accomplish her work. Van Pelt had full access on the local area network (LAN) to all company passwords, but Yazzie, notwithstanding that she was a constitutional officer of the organization, only had staff level access.

29.   Yazzie was never given access to the financial software nor was it ever installed
      on her computer. Van Pelt refused to provide monthly financial accountings or
      budget proposal to Yazzie so that she could report to the board as Treasurer, as
      required by the NOW bylaws.

30.   On Monday, January 15, 2018, at the Washington D.C., National Mall on Martin
      Luther King Day, staff intended to work in the field to do organizational
      standard social media field work and feminist organizing as part of NOW's
      mission. Nonetheless, Van Pelt required staff to work in the office, neither
      permitting them to attend events of the day nor allowing them to take the day
      off, which is a Federal holiday. Yazzie, while attending a rally in honor of the
      holiday in her official role, received a communication from staff lamenting their
      inability to attend something which prior to the Van Pelt Presidency they would
      have been present as a matter of course. Those communications also expressed
      concern that pay checks of staff might not be approved by Van Pelt.

31.   On January 29, 2018, at 11:20 a.m., Van Pelt confronted Yazzie, yelling at her:
      "You won't be here for three years!" "You don't understand" and "I am the
      president, so you have to do what I say." The Plaintiff attempted to retreat to her
      office, but Van Pelt pursued her, screaming and yelling. Others in the office
      could see and hear this. Van Pelt followed Yazzie into her office, screamed at her,
      threw papers at her, bumped her (i.e., body slammed Yazzie) and cornered
      Plaintiff. Yazzie was intimidated. She managed to move around her desk and

escape her office to the office of staff member, Linda Berg.  Van Pelt immediately

followed, still shouting.  At Yazzie's request, Linda Berg accompanied Yazzie

back to her office.

32.    Immediately after the battery upon Plaintiff by Van Pelt and with Linda Berg in

the office, Yazzie quickly and in great distress, prepared a memorandum which

she distributed to fellow staff and interns describing Van Pelt's behavior: "It's

scary at the National Action Center" and "Of most concern is that she is

patronizing to the people of color staff." Yazzie indicated that because of the

intimidation, she would have to work at home in the coming days.

33.    In addition to the memorandum, Yazzie drafted a message which was sent to all

staff members. The message said: "Toni Van Pelt has created a hostile work-place

for me.  I will be working remotely. The hostile action occurred at approximately,

11:20 a.m. I did send this message earlier, but wanted to be clear that I have been

physically threaten[ed] in a demeaning situation created by Toni Van Pelt."

34.    Van Pelt was evidently displeased with Yazzie's memorandum and text message.

Her response to Yazzie, also on January 29: "Please do not [make]

announcements to staff concerning the business of NOW and/or our personal

relationship." And "I determine your job duties and will soon provide to you

your job description."  Van Pelt closed her response thusly: "I expect to see you at

the office tomorrow behaving in a calm, rational manner."

35.    On February 5, 2018, Yazzie followed NOW protocol and informed the NOW

Advisory Committee of Van Pelt's misconduct, specifically the verbal abuse of her by Van Pelt and physical stalking of Plaintiff by Van Pelt, all of which escalated into intimidation and battery on January 29, 2017. Yazzie wrote "The past week I've been working remotely with fewer hours at the office to avoid Toni." Yazzie further wrote that because of the abusive behavior on the part of Van Pelt "I require assistance with communication with Toni... this might aid in providing a safe workplace and my wellbeing." Yazzie further wrote in the same February 5, 2018, communication that: "[t]he reason I am notifying the Advisory Committee is because officers' issues are to be referred to this committee."

36.    Staff Member Chioke Barkari resigned in March 2018. Upon learning of Barkari's resignation, Van Pelt unilaterally announced an immediate change to the Employee Handbook that limited vacation payouts to departing employees to 40 hours. Barkari in particular was owed 72 hours. Van Pelt wanted to limit Barkari's payout to 68 hours. Senior Accounting Executive Sparkle Barrett defied Van Pelt and saw to it that NOW followed the law by giving Barkari payment for the full 72 hours of vacation pay she was owed.

37.    Barkari, had also experienced Van Pelt's hostility and intimidating behavior, including physical hovering over Barkari while she was seated at her desk. Barkari identifies as African American, a fact known to Van Pelt.

38.    On March 23, 2018, Rachel Motley was discussing a payroll software, Paychex, related matter with Yazzie, something that was within Plaintiff's job description

as she was the point of contact for Paychex. The two were five minutes into their

conversation when Van Pelt burst through the door without knocking and

immediately raised her voice to demand to know the nature of the conversation.

After replying to Van Pelt that they were discussing a Paychex related matter,

Yazzie left. Following the Plaintiff's departure, Van Pelt remained and

demanded to know from Motley what they were "really talking about."  Motley

repeated what had been previously said.  Van Pelt then prohibited Motley from

ever in the future discussing Paychex related issues with Yazzie,

notwithstanding the fact that the interface with Paychex was a part of Yazzie's

job description.  Van Pelt prohibited other staff members from having any

communication with Yazzie relating to matters for which Plaintiff had

responsibility.

39.     In April 2018, Van Pelt summarily discharged Sparkle Barrett.

40.     Van Pelt prohibited most staff members from having any communication

directly with Yazzie which impaired Yazzie's ability to perform her job.

However, Van Pelt continued to publish communications to NOW membership

via print and email using Yazzie's name without obtaining Yazzie's input or

agreement prior to publication. Van Pelt at no time during her tenure consulted

Yazzie on the content of organizational publications, including a press release

referring to "Redskins" cheerleaders without recognizing the widely recognized

dispute over the implied racism and Native American community outrage over

the term.

41.     In May 2018, Lisa Siegel, who was inexperienced with administration, was

        promoted from part time archivist to Chief of Staff. In that role, Siegel was,

        among other things, given the assignment of: onboarding new employees,

        managing employee benefits and training the new "Chapters Specialist."  All of

        these duties, including the oversight of chapter and member relations, were, as

        provided by the bylaws and prior practice, the responsibility of Yazzie as Vice

        President.

42.     In May 2018, Yazzie was criticized by Van Pelt for failing to manage the

        financials and to supervise the bookkeeper, although that responsibility

        belonged exclusively to Van Pelt and was always and solely a part of Van Pelt's

        job description, pursuant to NOW bylaws and the practice of the prior president,

        Terry O'Neill. Yazzie who was never given access to the financial software, nor

        was she permitted to view the monthly financial statements, was scapegoated by

        Van Pelt in professional audit reports that warned of NOW's failure to follow the

        standard industry corporate financial practices that had been employed prior to

        Van Pelt's tenure.

43.     In May 2018, Rui Mulligan finally had enough and resigned.  Van Pelt had again

        subjected her to a de facto demotion to "IT person."  In an after-work telephone

        conversation with Mulligan, Van Pelt said: "I don't care about anything you have

        to say. I only care about you doing exactly what I tell you to do immediately."

44.     On May 21, 2018, Van Pelt told Plaintiff that she was being given a choice: To

        resign or to take "personal time" leave.   When Yazzie "chose" to take personal

        time leave, she was barred from the NOW Office and she was denied access to

        her NOW E-mail account, notwithstanding the fact that she was the duly elected

        Vice President of the organization.  Pursuant to the order of Van Pelt, the locks to

        the NOW national office were changed and Yazzie was not given keys to the

        changed locks. Yazzie's name was "signed" on an email that she did not draft and

        did not, herself send. The email stated that henceforth Yazzie would be out of the

        office.  At time the email was sent and thereafter, Yazzie was denied access to her

        email account.  When members of the Executive Board complained of this, Van

        Pelt falsely claimed that Yazzie's email account had been "hacked" or that the

        problems were due to "technical problems."

45.     Several staff members complained to the Board of Directors in writing, including

        therein an extensive folder of files, texts and emails substantiating their claims to

        have witnessed Van Pelt's disrespectful and intimidating treatment of staff

        members of color as well as non gender-normative staff.  Included in their

        complaints was documentation of the physically intimidating  and aggressive

        treatment of Yazzie and other women of color by Van Pelt.

46.     On June 2018, Van Pelt presided over a meeting of the Board of Directors in

        which she attempted to persuade the Board of Directors to remove Yazzie. Van

        Pelt and her appointed Budget Committee chair, Cynthia Drabek, produced a

written report by a professional auditor that Gilda Yazzie was failing the organization by not producing monthly income statements and budgetary reports. The report recommended action be taken for the protection of the organization.   Upon a video interview with the auditor, the Board debunked the auditor's report because the auditor was misled into thinking it was Yazzie who was Chief Financial Officer, when in fact Van Pelt held that responsibility and it was always and only Van Pelt's job description to produce those financial reports. The auditor, having been unfamiliar with the account had not reviewed an email from the accountant from his same firm, who had worked with the prior administration warning that Van Pelt was expected to produce the monthly financial statements as part of her role. This was further substantiated in writing by a letter to the Board of Directors from Wommack, that in his duties as Information Technologist for NOW, he both witnessed Van Pelt's abusive behavior towards Yazzie and that he was specifically forbidden by Van Pelt from allowing Yazzie access to NOW's financial software during her entire tenure. In response to the deceitful scapegoating, Yazzie and her supporters complained that Van Pelt's behaviors created a hostile work environment for Yazzie and that there was discrimination against women of color within the NOW Headquarters. On the one hand, the Board of Directors declined to act on Van Pelt's demand that Yazzie be removed but, on the other, the Board also declined to investigate the credible allegations by several staff members of racial discrimination and a

Yazzie v. National Organization for Women, Complaint for Damages

hostile work environment for people of color.

47.   In June 2018, Brittany Oliver, who identifies as African American, applied for the
Communications Director position, a job for which she had ample qualifications.
She was interviewed by Van Pelt and Lisa Siegel. Plaintiff Yazzie, by virtue of
her office, should have participated in the interview but was excluded by Van
Pelt. Oliver did well in the interview and Van Pelt offered Oliver a job, but not
the Communications Director job for which she applied, which was vacant and
for which she qualified. Instead, Van Pelt offered Oliver a newly created
position of "Assistant Director of Communications and Advocacy" at a much
lower salary. However, during Oliver's four-month tenure with NOW she
performed the work of a Communications Director, a position which remained
vacant. Oliver asked Van Pelt why she was not offered the Communications
Director position. Van Pelt stated that she did not "feel" that Oliver qualified to
be a full director.

48.   NOW, at the direction of Van Pelt, treated Oliver as an "exempt" employee which
meant that even though Oliver usually worked a substantial number of hours in
excess of 40 hours per week, she was never paid overtime compensation.

49.   In July 2018, Vicki Linton, Membership and Development Specialist wrote a
letter to the Board of Directors confirming that she witnessed racial
discrimination and hostility in the NOW work-place and that she was resigning.
She admonished the board for not acting after more than 16 employees had

Yazzie v. National Organization for Women, Complaint for Damages

complained of a hostile work environment. Her letter stated: "I found the treatment of Gilda Yazzie deeply troubling additionally because I repeatedly heard Toni state that she only chose Gilda as her vice presidential candidate because 'They said I had to have a woman of color.' Gilda is well known as a longtime NOW activist and member of the board with significant experience with NOW's budget. It was disturbing to see Gilda casually treated as a token woman of color chosen to enhance the intersectional credibility of a white woman."

50.   In July 2018, the NOW Board heard Van Pelt accuse Yazzie of being a person of poor moral standards who should be removed from office.  The NOW board heard testimony from a communications coach Anne Durant, sanctioned by the Board to mediate, that Van Pelt refused to cooperate with efforts to communicate with Yazzie and that Van Pelt remained hostile toward Yazzie. The Board determined that for Yazzie's protection, she would be given a budget and permitted to work in the field to avoid personal interactions with Van Pelt.  The NOW board appointed a Vice-Presidential Oversight Committee which was directed to supervise the activities of Plaintiff Yazzie.  No vote was taken as to the amount of the Vice-President's field budget stating that a lack of time would require a decision at a future board meeting. The stated purpose of the oversight Board was to protect Yazzie from Van Pelt.  Despite oversight of the Chief Executive as their primary duty as board members, no other action was made to

investigate or ameliorate, much less impose discipline or censure, the many

accusations of racism and hostile work environment against Van Pelt.

51.   In reprisal for Yazzie's protected activity and in retaliation for her tenacity and

refusal to resign, Van Pelt ordered Yazzie to cease all contact with NOW staff

and Board members, refused her necessary resources to do her work and

assigned her impossible and/or tedious tasks.

52.   In August 2018, Assistant Communications Director Oliver requested that NOW

issue a public response to a white supremacist rally.  Van Pelt thereupon went

into Oliver's office, sat down and said "You know, Black people can be racist

too."  Van Pelt insisted that Oliver include references to Jewish people in NOW's

official statement.  In discussing the statement, Van Pelt admitted that,

historically, NOW had problems with African Americans.

53.   On October 9, 2018, Assistant Communications Director Oliver was given a 90

day review by Van Pelt and Siegel.  At no point in the review did Van Pelt or

Siegel tell Oliver that her work was unsatisfactory or that her job was in

jeopardy.  However, Van Pelt did say she was concerned that Oliver seemed to

be "more concerned about Black women than all women."  After the meeting,

Oliver told Siegel that she was offended by Van Pelt's statement. NOW's stated

mission recognizes the intersection of racism and sexism, therefore Black

women's issues are all women's issues.

54.   Subsequent to the October 9 review, a NOW Board meeting was held. Assistant

Communications Director Oliver was scheduled to give a report. Although
Oliver was scheduled to give an oral presentation, she had prepared a written
report that would accompany the presentation. As part of her job duties with
NOW, Oliver was also participating in the National March for Black Women in a
leadership role. On the day of the NOW Board meeting, Oliver had a
responsibility for the National March for Black Women that had a strict
production schedule. However, because the NOW Board Meeting was
extraordinarily delayed, a scheduling conflict arose between Oliver's
responsibility to present the report to the NOW Board and her responsibility to
the National March for Black Women, both of which were part of Oliver's job
with NOW.   Accordingly, Oliver had to leave the NOW meeting early.  Before
she did, she gave the written report to Plaintiff to deliver which Yazzie agreed to
do. However, Van Pelt refused to allow Yazzie to do so and, for that reason, the
report was not presented. Shortly thereafter, on October 17, Van Pelt fired Oliver
supposedly for "not meeting expectations" for failing to give her report.

55.   On October 27, 2018, Christian Nunez and Nancy Campbell Mead of the
Oversight Committee, acting upon Van Pelt's instructions, told Yazzie that her
work was excessively focused on issues of concern to Native American Women.
Yazzie was told by Nunez and Mead that "Gilda cannot only focus on Native
Women "it is great but not inclusive.""   Yazzie responded that Native Women's
issues are feminist issues and enumerated substantial accomplishments

consistent with her role as Vice President and with the mission of NOW.

56.  When Van Pelt was confronted by a Board member over the Oliver firing, Van
     Pelt claimed that Oliver was fired for performance reasons: "She wasn't doing the
     job we hired her to do." Van Pelt also claimed that Oliver's job had been
     eliminated, that it no longer existed.   When the Board member asked Van Pelt
     whether she had told Oliver what is quoted above, Van Pelt did not respond.

57.  Board member and Toni Van Pelt campaign manager, Beth Corbin stated in an
     email to Yazzie and the entire NOW board of directors on December 27, 2018:
     "The reason you are not working at the National Action Center was not to
     protect you from Toni, but to protect the organization from you. We cannot have
     someone in our NAC that was embezzling money from our organization, and
     actively working to turn staff against the President."

58.  One week later on January 2, 2019, Van Pelt announced in a staff meeting that
     Yazzie was to immediately cease publicly representing NOW on the issue of the
     Equal Rights Amendment and would have to cancel an upcoming United
     Nation's panel talk invitation.  Without explanation, Van Pelt told Yazzie she
     could no longer speak on behalf of NOW without her direct prior approval.
     Before that staff meeting, Yazzie had been submitting weekly reports for months
     which included various radio and panel discussions on the subject of the Equal
     Rights Amendment.  In each report, Yazzie made futile requests for
     organizational financial reports so that she could fulfill her duties to report to the

Board of Directors as Treasurer.

59.     On January 16, 2019, Yazzie was placed on medical leave due to the stress

caused by the harassment by Van Pelt and her minions.

60.     On January 19, 2019, Van Pelt publicly repudiated and refused NOW

organizational support for the National Women's March, because of allegations

that one of their founders, a woman of color, was allied with controversial

Minister Louis Farrakhan. Van Pelt ignored the Women's March official

statement: "Minister Farrakhan's statements about Jewish, queer, and trans

people are not aligned with the Women's March Unity principles" declaring

secular peace, feminist unity and respect for people of the Jewish faith and all

faiths. The repudiation by NOW of the Women's March occurred over the

written objection of Yazzie.

61.     The purpose of a NOW Board meeting set for January 25, 2019, was to address

Brittany Oliver's complaint of racial discrimination and intimidation against Van

Pelt and NOW. The meeting, hijacked by Van Pelt and her allies, solely focused

on alleged deficiencies in Yazzie's performance, relying upon the allegations that

had been discredited in the June and July Board meetings. Cindy Drabek

presented a statement additionally alleging that Yazzie had illegally used the

NOW credit card. As a result of the hijacking of the January 25, 2019, NOW

Board meeting, the way was cleared for Van Pelt to accomplish her purpose of

removing Yazzie from the NOW leadership and work place.

Yazzie v. National Organization for Women, Complaint for Damages

62.    By the direction of Van Pelt, Yazzie was removed from office of NOW Vice

President on May 6, 2019.  At Van Pelt's direction the following public

announcement was made on May 7: "Gilda Yazzie is no longer the NOW vice

president by removal from office by the national board and in accordance with

NOW's bylaws."

### CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
### Race Discrimination -Title VII
### As to Defendant NOW only

63.    The Plaintiff hereby incorporates paragraphs 1 through 62 supra, with the same

force and effect as if fully pleaded at length herein.

64.    This is an action for damages arising out of racial discrimination in employment.

65.    At all times relevant herein, Plaintiff's job performance was always satisfactory

and was usually excellent.

66.    Plaintiff was associated with all the other non Caucasian employees of Defendant

NOW by advocating on their behalf and by being so categorized by Van Pelt,

67.    Yazzie was assaulted, battered,  repeatedly demoted, forced from her office in

the NOW headquarters and ultimately discharged from her employment by Van

Pelt.  Moreover, Van Pelt never fully allowed Plaintiff to perform her job

responsibilities.  Defendant  NOW refused to provide Plaintiff with the tools,

resources and support required for  Plaintiff to perform her duties.

68.    Evidence of discriminatory animus includes, but is not limited to, the fact that

Van Pelt at best treated Plaintiff as a "token" woman of color, who has the title of

her job but not the responsibilities or authorities. Additional evidence of discriminatory animus is seen in how Van Pelt referred to and treated other women of color in the NOW workplace. Still more evidence of discriminatory evidence is to be seen in the refusal of Van Pelt to provide service or support for the work of women of color, who were and are feminists and would have been provided service and support had they or their leadership been Caucasian females.

69.    As a result of the discriminatory prejudices and biases of Plaintiff's immediate supervisor, Toni Van Pelt, Plaintiff suffered a series of adverse employment actions including, but not limited to, demotion, suspension and discharge from employment.

70.    As a result of the racial discrimination, Plaintiff will suffer a loss of past and future earnings.

71.    As a result of the racial discrimination described herein, Plaintiff has been held up to great derision and embarrassment before her fellow coworkers, friends, members of NOW and the community. Plaintiff has suffered emotional distress because NOW has subjected her to disparate treatment on account of her race and the race with whom she is associated (i.e., Non Caucasians). Plaintiff is informed and believes that NOW discriminated against her knowing that such discrimination would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at the time of

trial.

72.    In doing the acts set forth above, NOW acted intentionally, and with a conscious

disregard of Plaintiff's rights to equal employment opportunities regardless of

race. Moreover, Defendant NOW represents to its supporters and its donors that

is dedicated to ending racism.  The actions alleged herein make a mockery of

said representation. Defendant has acted, and continues to act, with a reckless

disregard of its obligations under the law. The Defendant's conduct, as alleged

herein, was and is despicable, malicious and oppressive. The Plaintiff is therefore

entitled to an award of punitive damages in an amount to be proven at the time

of trial.

SECOND CLAIM FOR RELIEF
Hostile Environment Race
Title VII
As to Defendant NOW only

73.    Plaintiff incorporates by reference each of the facts alleged in paragraphs 1

through 62 as if fully pleaded at length herein.

74.    This is an action for damages arising out of racial harassment in employment.

75.    Defendant NOW, by and through Toni Van Pelt and her subordinates, created a

hostile work environment for Plaintiff through public humiliation, battery, acts

of intimidation, racial slurs and other acts demonstrating bigotry and meanness

toward Plaintiff on account of her race and her association with other women of

color.

76.    Defendant NOW, by and through Toni Van Pelt and her subordinates created a

hostile work environment for Plaintiff through tokenism, denying her the authority and resources to fulfill the role for which she was elected.

77. Defendant NOW has an obligation under the law to assure a work environment free from harassment on the basis of race.

78. NOW, as alleged herein, knowingly created and/or maintained a hostile work environment on the basis of race. NOW, by and through its managers, officers, directors and vice principals, either knew about the hostile work environment and failed to take remedial action, or intentionally created a hostile work environment based on race.

79. As a result of the hostile work environment described herein, Plaintiff has been held up to great derision and embarrassment before her fellow coworkers, friends, members of NOW and the community. Plaintiff has suffered emotional distress because NOW has subjected her to a racially hostile work environment. Plaintiff is informed and believes that NOW maintained such a racially hostile work environment, knowing that it would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at the time of trial.

80. In doing the acts set forth above, NOW acted intentionally, and with a conscious disregard of Plaintiff's rights to work in an environment free from racial hostility. NOW has acted, and continues to act, with a reckless disregard of its obligations under the law. Moreover, Defendant NOW represents to its supporters and its

donors that is dedicated to ending racism.  The actions alleged herein make a mockery of said representation. The  conduct of NOW, as alleged herein, was and is despicable, malicious and oppressive.  Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

<u>THIRD CLAIM FOR RELIEF</u>
Retaliation
Title VII
As to Defendant NOW only

81.    Plaintiff incorporates by reference each of the facts alleged in paragraphs 1 through 62 as if fully pleaded at length herein.

82.    This is an action for damages arising out of retaliation against Yazzie for opposing racial discrimination and harassment in  employment as to her and other women of color.

83.    At all times relevant herein, Plaintiff's job performance was always satisfactory and was usually excellent.

84.    NOW, as alleged herein, retaliated against Plaintiff for opposing unlawful employment  discrimination and harassment of herself and her non Caucasian coworkers.

85.    As a result of the unlawful retaliation alleged herein, Plaintiff has been subjected to a series of adverse employment actions including, but not limited to, demotion, suspension and discharge from employment.

86.    As a result of the unlawful retaliation alleged herein, Plaintiff was compelled to accept a reduction in pay due to the wrongful acts of NOW.

87.   As a result of the unlawful retaliation alleged herein, Plaintiff will suffer a loss of future earnings.

88.   As a result of the unlawful retaliation described herein, Plaintiff has been held up to great derision and embarrassment before her fellow coworkers, friends, members of NOW and the community Plaintiff has suffered emotional distress because NOW has subjected her to retaliation for the purposes of punishing her for having engaged in protected activity.  Plaintiff is informed and believes that NOW retaliated against her knowing that retaliation would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at the time of trial.

89.   In doing the acts set forth above, NOW acted intentionally and with a conscious disregard of Plaintiff's rights to equal employment opportunities regardless of race. Defendant has acted, and continues to act, with a reckless disregard of its obligations under the law. Moreover, Defendant NOW represents to its supporters and its donors that is dedicated to ending racism.  The actions alleged herein make a mockery of said representation. NOW acted to punish Plaintiff for having opposed its discriminatory practices and to deter others from doing so in the future.  For this reason the conduct of NOW, as alleged herein, was and is despicable, malicious and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

### FOURTH CLAIM FOR RELIEF
#### Race Discrimination - 42 U.S.C. § 1981

Yazzie v. National Organization for Women, Complaint for Damages

## As to Defendant NOW only

90.    The Plaintiff hereby incorporates paragraphs 1-9, 11 and 12-60 supra, with the
same force and effect as if fully pleaded at length herein.

91.    This is an action for damages arising out of racial discrimination in employment.

92.    At all times relevant herein, Plaintiff's job performance was always satisfactory
and was usually excellent.

93.    Plaintiff was associated with all the other non Caucasian employees of Defendant
NOW by advocating on their behalf and by being so categorized by Van Pelt,

94.    Yazzie was assaulted, battered, repeatedly demoted, forced from her office in
the NOW headquarters and ultimately discharged from her employment by Van
Pelt. Moreover, Van Pelt never fully allowed Plaintiff to perform her job
responsibilities. Defendant NOW refused to provide Plaintiff with the tools,
resources and support required for Plaintiff to perform her duties.

95.    Evidence of discriminatory animus includes, but is not limited to, the fact that
Van Pelt at best treated Plaintiff as a "token" woman of color, who has the title of
her job but not the responsibilities or authorities. Additional evidence of
discriminatory animus is seen in how Van Pelt referred to and treated other
women of color in the NOW workplace, including Plaintiff herself. Still more
evidence of discriminatory evidence is to be seen in the refusal of Van Pelt to
provide service or support for the work of women of color, who were and are
feminists and would have been provided service and support had they or their

leadership been Caucasian females.

96.    As a result of the discriminatory prejudices and biases of Plaintiff's immediate supervisor, Toni Van Pelt, Plaintiff suffered a series of adverse employment actions including, but not limited to, demotion, suspension and discharge from employment.

97.    As a result of the racial discrimination, Plaintiff will suffer a loss of past and future earnings.

98.    As a result of the racial discrimination described herein, Plaintiff has been held up to great derision and embarrassment before her fellow coworkers, friends, members of NOW and the community. Plaintiff has suffered emotional distress because NOW has subjected her to disparate treatment on account of her race and the race with whom she is associated (i.e., Non Caucasians). Plaintiff is informed and believes that NOW discriminated against her knowing that such discrimination would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at the time of trial.

99.    In doing the acts set forth above, NOW acted intentionally, and with a conscious disregard of Plaintiff's rights to equal employment opportunities regardless of race. Moreover, Defendant NOW represents to its supporters and its donors that is dedicated to ending racism. The actions alleged herein make a mockery of said representation. Defendant has acted, and continues to act, with a reckless

disregard of its obligations under the law. The Defendant's conduct, as alleged herein, was and is despicable, malicious and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

**FIFTH CLAIM FOR RELIEF**
Hostile Environment Race
**42 U.S.C. § 1981**
As to Defendant NOW only

100.  Plaintiff incorporates by reference each of the facts alleged in paragraphs 1-9, 11, and 13-60 as if fully pleaded at length herein.

101.  This is an action for damages arising out of racial harassment in employment.

102.  Defendant NOW, by and through Toni Van Pelt and her subordinates, created a hostile work environment for Plaintiff through public humiliation, battery, acts of intimidation, racial slurs and other acts demonstrating bigotry and meanness toward Plaintiff on account of her race and her association with other women of color.

103.  Defendant NOW, by and through Toni Van Pelt and her subordinates created a hostile work environment for Plaintiff through tokenism, denying her the authority and resources to fulfill the role for which she was elected.

104.  Defendant NOW has an obligation under the law to assure a work environment free from harassment on the basis of race.

105.  NOW, as alleged herein, knowingly created and/or maintained a hostile work environment on the basis of race. NOW, by and through its managers, officers,

directors and vice principals, either knew or should have known about the hostile work environment and failed to take remedial action, or intentionally created a hostile work environment based on race.

106.    As a result of the hostile work environment described herein, Plaintiff has been held up to great derision and embarrassment before her fellow coworkers, friends, members of NOW and the community. Plaintiff has suffered emotional distress because NOW has subjected her to a racially hostile work environment. Plaintiff is informed and believes that NOW maintained such a racially hostile work environment, knowing that it would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at the time of trial.

107.    In doing the acts set forth above, NOW acted intentionally, and with a conscious disregard of Plaintiff's rights to work in an environment free from racial hostility. Moreover, Defendant NOW represents to its supporters and its donors that is dedicated to ending racism. The actions alleged herein make a mockery of said representation. NOW has acted, and continues to act, with a reckless disregard of its obligations under the law. The conduct of NOW, as alleged herein, was and is despicable, malicious and oppressive. Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

### SIXTH CLAIM FOR RELIEF
Retaliation
**42 U.S.C. § 1981**
As to Defendant NOW only

Yazzie v. National Organization for Women, Complaint for Damages

108.    Plaintiff incorporates by reference each of the facts alleged in paragraphs 1 -9, 11

      and 13-62 as if fully pleaded at length herein.

109.    This is an action for damages arising out of retaliation for opposing racial

      discrimination and harassment in employment both as to Plaintiff herein but also

      as to other women of color in the NOW workplace.

110.    At all times relevant herein, Plaintiff's job performance was always satisfactory

      and was usually excellent.

111.    NOW, as alleged herein, retaliated against Plaintiff for opposing unlawful

      employment  discrimination and harassment of herself and her non Caucasian

      coworkers.

112.    As a result of the unlawful retaliation alleged herein, Plaintiff has been subjected

      to a series of adverse employment actions including, but not limited to,

      demotion, suspension and discharge from employment.

113.    As a result of the unlawful retaliation alleged herein, Plaintiff has been

      compelled to accept a reduction in pay due to the wrongful acts of NOW.

114.    As a result of the unlawful retaliation alleged herein, Plaintiff will suffer a loss of

      future earnings.

115.    As a result of the unlawful retaliation described herein, Plaintiff has been held up

      to great derision and embarrassment before her fellow coworkers, friends, and

      members of NOW and the community. Plaintiff has suffered emotional distress

      because NOW has subjected her to retaliation for the purposes of punishing her

for having engaged in protected activity.  Plaintiff is informed and believes that NOW retaliated against her knowing that retaliation would cause severe emotional distress. Plaintiff therefore seeks damages for such emotional distress in an amount to be proven at the time of trial.

116.   In doing the acts set forth above, NOW acted intentionally and with a conscious disregard of Plaintiff's rights to equal employment opportunities regardless of race. Moreover, Defendant NOW represents to its supporters and its donors that is dedicated to ending racism.  The actions alleged herein make a mockery of said representation. Defendant has acted, and continues to act, with a reckless disregard of its obligations under the law. NOW acted to punish Plaintiff for having opposed its discriminatory practices and to deter others from doing so in the future.  For this reason the conduct of NOW, as alleged herein, was and is despicable, malicious and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

**SEVENTH CLAIM FOR RELIEF**
Assault
**As to Defendants NOW & Van Pelt only**

117.   The Plaintiff hereby incorporates paragraphs 1-9, 11 and 13-62 supra, with the same force and effect as if fully pleaded at length herein.

118.   Defendant Van Pelt on the occasions alleged herein engaged in an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to Plaintiff.

119.    Defendant Van Pelt on the occasions alleged herein intended to cause in the
        Plaintiff an apprehension of a battery.

120.    Defendant Van Pelt had and has a practice of engaging in physical intimidation
        to resolve or attempt to resolve with subordinates and colleagues workplace
        issues and disputes, including not only those with Plaintiff herein but, as alleged
        herein, with others in the workplace, as exemplified by what occurred on
        January 29, 2018, and before and thereafter, up to and including the present.

121.    Defendant NOW is aware of the practice described in the preceding paragraph
        and has taken no action to counsel or discipline Van Pelt, but, instead, has
        ratified such conduct.

122.    As a result of the unlawful acts of assault and intimidation, Plaintiff Yazzie has
        been held up to great derision and embarrassment before her fellow coworkers,
        friends, members of NOW and the community. Plaintiff has suffered emotional
        distress because Van Pelt and NOW has subjected her to assault and
        intimidation. Plaintiff is informed and believes that Van Pelt acted with the
        knowledge and intent of causing her severe emotional distress and that NOW
        ratified such tortious misconduct. Plaintiff therefore seeks damages for such
        emotional distress in an amount to be proven at the time of trial.

123.    In doing the acts set forth above , Van Pelt acted intentionally and with a
        conscious disregard of the rights of Plaintiff and others in the workplace.  By
        failing to take corrective action and by ratification, Defendant NOW has acted,

Yazzie v. National Organization for Women, Complaint for Damages

and continues to act, with a reckless disregard of its obligations under the law. For this reason the conduct of Van Pelt and NOW, as alleged herein, was and is despicable, malicious and oppressive. The Plaintiff is therefore entitled to an award of punitive damages in an amount to be proven at the time of trial.

### EIGHTH CLAIM FOR RELIEF
**Battery**
**As to Defendants NOW & Van Pelt only**

124.   The Plaintiff hereby incorporates paragraphs 1-9, 11, and 13-62 supra, with the same force and effect as if fully pleaded at length herein.

125.   Pursuant to practice of Van Pelt of engaging in assault and intimidation as a means of resolving disputes with colleagues and subordinates, as part of the physical confrontation on January 29, 2018, Van Pelt touched Yazzie in an offensive and harmful manner.

126.   Defendant NOW was and is aware of Van Pelt's act of battery against Plaintiff on January 29, 2018, but instead approved and ratified said action.

127.   As a result of the unlawful acts of assault and intimidation, Plaintiff Yazzie has been held up to great derision and embarrassment before her fellow coworkers, friends, and members of the community. Plaintiff has suffered emotional distress because Van Pelt and NOW has subjected her to battery. Plaintiff is informed and believes that Van Pelt acted with the knowledge and intent of causing her severe emotional distress and that NOW ratified such tortious misconduct. Plaintiff therefore seeks damages for such emotional distress in an amount to be

proven at the time of trial.

128.    In doing the acts set forth above , Van Pelt acted intentionally and with a

conscious disregard of the rights of Plaintiff and others in the workplace.  By

failing to take corrective action and by ratification, Defendant NOW has acted,

and continues to act, with a reckless disregard of its obligations under the law.

For this reason the conduct of Van Pelt and  NOW, as alleged herein, was and is

despicable, malicious and oppressive. The Plaintiff is therefore entitled to an

award of punitive damages in an amount to be proven at the time of trial.

### NINTH CLAIM FOR RELIEF
**Defamation**
**As to all Defendants**

129.    The Plaintiff hereby incorporates paragraphs 1--9, 11 and 13-62 supra, with the

same force and effect as if fully pleaded at length herein.

130.    The individual Defendants, and each of them, made false statements regarding

Yazzie.

131.    The individual Defendants accused Plaintiff herein of embezzlement and illegal

credit card use, which are crime.s  Such an accusation tended and tends  to injure

plaintiff in her trade, profession, or community.  Said accusation was false and

was known by said individual Defendants to be false.

132.    The accusations by said Defendants was not only intended to damage Plaintiff

within the organization of NOW but also in the larger community of which

Yazzie was and is a part.  Said accusations were originated by Defendant Van

Pelt and were repeated by the other individual Defendants to punish Plaintiff for

her refusal to resign her position as Vice President of NOW. In addition, Van Pelt

and the other individual defendants stood to benefit from their defamatory

accusations,

133.   Defendant NOW knew of the conduct of said individual Defendants and it either

knew or should have known said accusation was false but ratified said conduct.

134.   Plaintiff Yazzie was and continues to be damaged as a result of said defamatory

accusations.

135.   As a result of the defamatory statements, Plaintiff Yazzie has been held up to

great derision and embarrassment before her fellow coworkers, friends, members

of NOW and the community Plaintiff has suffered emotional distress because her

reputation has been defamed.  Plaintiff is informed and believes that the

individual Defendants acted with the knowledge and intent of  causing her

severe emotional distress and that NOW ratified such tortious misconduct.

Plaintiff therefore seeks damages for such emotional distress in an amount to be

proven at the time of trial.

136.   In doing the acts set forth above , the individual Defendants acted intentionally

and with a conscious disregard of the rights of Plaintiff.  By failing to take

corrective action and by ratification, Defendant NOW has acted, and continues to

act, with a reckless disregard of its obligations under the law. For this reason the

conduct of Defendants, all of them, as alleged herein, was and is despicable,

malicious and oppressive. The Plaintiff is therefore entitled to an award of

Yazzie v. National Organization for Women, Complaint for Damages

punitive damages in an amount to be proven at the time of trial.

\* \* \*

The Plaintiff hereby requests a trial by jury.

\* \* \*

WHEREFOR the Plaintiff requests the court grant her the following reliefL

1.    Back pay;

2.    Front pay;

3.    Compensatory damages;

4.    Damages for emotional distress;

5     Punitive damages;

6.    Such equitable and legal relief as the court deems just, proper and

necessary;

7.    Statutory attorney fees; and

9.    Costs of suit.

Date: October 25, 2019                        Respectfully Submitted,

By: Angela M. Alioto
(D.C. Bar No. 423621)
**LAW OFFICES OF JOSEPH L.
ALIOTO
AND ANGELA ALIOTO**
700 Montgomery Street
San Francisco, CA  94111
Telephone: (415) 434-8700
Facsimile: (415) 438-4638
AngelaAV@aol.com

# ATTACHMENT E

**CIVIL COVER SHEET**

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| GILDA YAZZIE | NATIONAL ORGANIZATION FOR WOMEN, TONI VAN PELT, CYNTHIA DRAEBEK , BETH CORBIN |
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Apache, AZ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT D.C. (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Law Offices of Joseph L. Alioto and Angela Alioto 700 Montgomery Street, 3rd Floor San Francisco, CA 94111 Telephone: 415-434-8700 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (●) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ( )1 | ( )1 | Incorporated or Principal Place of Business in This State | ( )4 | (●)4 |
| Citizen of Another State | (●)2 | ( )2 | Incorporated and Principal Place of Business in Another State | ( )5 | ( )5 |
| Citizen or Subject of a Foreign Country | ( )3 | ( )3 | Foreign Nation | ( )6 | ( )6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

**( ) A. Antitrust**
- [ ] 410 Antitrust

**( ) B. Personal Injury/ Malpractice**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Product Liability

**( ) C. Administrative Agency Review**
- [ ] 151 Medicare Act

Social Security
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

**( ) D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**(●) E. General Civil (Other)        OR        ( ) F. Pro Se General Civil**

Real Property
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

Personal Property
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

Bankruptcy
- [ ] 422 Appeal 27 USC 158
- [ ] 423 Withdrawal 28 USC 157

Prisoner Petitions
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Conditions
- [ ] 560 Civil Detainee -- Conditions of Confinement

Property Rights
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent -- Abbreviated New Drug Application
- [ ] 840 Trademark

Federal Tax Suits
- [ ] 870 Taxes (US plaintiff or defendant)
- [ ] 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

Other Statutes
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions
- [ ] 470 Racketeer Influenced & Corrupt Organization
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☒ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge   ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Title VII of theUnited States Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e)-5(f)(30)and 42 U.S.C. § 1981.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** **JURY DEMAND:** | Check YES only if demanded in complaint YES ☒  NO ☐ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐  NO ☒ | If yes, please complete related case form |

DATE: ___October 24, 2019___   SIGNATURE OF ATTORNEY OF RECORD _~~signature~~_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.  CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Gilda Yazzie
_____
                                    Plaintiff

                    vs.

                                                           Case Number  _____

National Organization of Women, et al.
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Angela Alioto
_____            *Clerk of the Court*
Name of Plaintiff's Attorney

700 Montgomery Street, 3rd Floor
_____            By  _____
Address                                                              Deputy Clerk
San Francisco, CA 94111

415-434-8700
_____            Date  _____
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주세요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION - Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Gilda Yazzic
_____ *Plaintiff(s)*

v.                                                    Case No: 2019 CA 007092 B _____

National Organization of Women, Toni Van Pelt, Cynthia Oraebek and Beth Corbin
_____ *Defendant(s)*

## NOTICE AND ACKNOWLEDGMENT OF SERVICE

To (insert name and address of the party to be served):
Marcia S. Cohen, Legal Counsel
National Organization for Women
1100 H Street, NW Suite 300
Washington DC 20005

    The enclosed summons, complaint, initial order, and any addendum are served in accordance with Superior Court Rule of Civil Procedure 4(c)(5).

    Please sign and date the Acknowledgement at the bottom of the page. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, please indicate your relationship to that entity in the space beside your signature. If you are served on behalf of another person and you are authorized to receive process, please indicate your authority in the space beside your signature.

    If you do not complete and return the form to the sender within 21 days after it was mailed and you do not show good cause for this failure, you (or the party on whose behalf you are being served) will be required to pay 1) the costs incurred in serving the summons, complaint, initial order, and any addendum in any other manner permitted by law and 2) the reasonable expenses, including attorney's fees, for any motion required to collect those service expenses.

    If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 21 days after you have signed, dated, and returned the form (or within 60 days if the party being served is the United States, the District of Columbia, or officers or employees of either). If you fail to do so, judgment by default may be entered against you for the relief demanded in the complaint.

    This Notice and Acknowledgment of Receipt of Summons, Complaint, Initial Order, and Any Addendum was mailed on (insert date) December 9, 2019 _____.

December 9, 2019
_____ *Signature*    _____ *Date of Signature*

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, INITIAL ORDER, AND ANY ADDENDUM

    I (print name) MARCIA S. COHEN received a copy of the summons, complaint, initial order, and any addendum in the above captioned matter at (insert address

**Marcia S. Cohen, P.A.**
**Plaza Tower**
**111 2nd Ave. NE #706**
**St. Petersburg, FL 33701**

_____ *Signature*    _____ *Relationship to Defendant/Authority to Receive Service*    Date of Signature 12/11/19

Para pedir una traducción, llame al (202) 879-4828
Để có một bài dịch, hãy gọi (202) 879-4828

如需翻译,请打电话 (202) 879-4828
ኣስተርጓሚ ይፈልጉ እንተኾይኑ (202) 879-4828 ይደውሉ

Veuillez appeler au (202) 879-4828 pour une traduction
번역을 원하시면, (202) 879-4828 로 전화주십시오

CA I-A [Rev. June 2017]                                    Super. Ct. Civ. R. 4



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Gilda Yazzie
_____
                                    Plaintiff

                    vs.                              Case Number   2019 CA 007092 B

National Organization of Women, et al.
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Angela Alioto
_____              Clerk of the Court
Name of Plaintiff's Attorney

700 Montgomery Street, 3rd Floor
_____        By _____
Address                                                        Deputy Clerk
San Francisco, CA 94111

415-434-8700
_____        Date        10/28/2019
Telephone
如需翻译，请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Dể có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 연락주십시오        ፖለቲካ ትርጉም ስታፈልጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español